UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEL FINANCING, LLC, <br>     Appellant, <br> v. <br> SCHOENMANN, <br>     Appellee. | Case No. 3:21-cv-07387-WHO <br><br> **ORDER ON MOTION FOR REHEARING** <br><br> Re: Dkt. No. 15 |

Appellant and cross-appellee Carmel Financing, LLC ("Carmel") moves for rehearing under Federal Rule of Bankruptcy Procedure 8022 of my recent order resolving the parties' appeals of several rulings of the Bankruptcy Court. *See* Motion for Rehearing ("Mot") [Dkt. No. 15]; Order on Bankruptcy Appeals ("Prior Order") [Dkt. No. 13]. Under Rule 8022, "[p]etitions for rehearing are designed to ensure that the appellate court properly considered all relevant information in rendering its decision. A petition for rehearing is not a means by which to reargue a party's case." *In re Hessco Indus., Inc.*, 295 B.R. 372, 375 (B.A.P. 9th Cir. 2003) (internal quotation marks and citations omitted). This Order assumes familiarity with the Prior Order and the motion. The motion for rehearing is DENIED.

*First*, rehearing is denied on Carmel's argument that the communication sent qualified as notice under Cal. Com. Code § 9312(b)(4). *See* Mot. 2–4. The Prior Order fully and adequately explained my ruling on this issue, *see* Prior Order 11–13, and Carmel's rehearing motion is largely a remix of its previous arguments.

*Second*, I reject Carmel's argument that it was "automatically a loss payee" and, so, was entitled to the proceeds regardless of whether its security interest was perfected. *See* Mot. 4–6.

Even assuming that this issue was adequately raised in its opening brief,[1] Carmel is incorrect. As a matter of undisputed fact, Carmel was not named or listed as a loss payee on the policy. And "[t]he general rule in California limits recovery of proceeds under an insurance contract to the named insureds." *Bonaparte v. Allstate Ins. Co.*, 49 F.3d 486, 488 (9th Cir. 1994) (citation omitted). To get around this, Carmel argues that it *should* have been named a loss payee due to the 2015 handwritten notation. *See* Mot. 4–5. But it is undisputed that, in response to the notation, it was never added to the policy. It responds that the policy itself provides that it will pay to mortgagees, making it "automatically" a loss payee, but that it not so: the policy states that it will pay to mortgage holders "*shown in the Declarations* in their order of precedence, as interests may appear." Dkt. No. 9-2 at 267 (emphasis added). Carmel was not listed in the declaration as a mortgagee. Though it thinks not being added was wrongful or mistaken, as the Bankruptcy Court correctly observed, it "took no steps to protect its rights in any insurance policy prior to the Tubbs Fire," *In re Mayacamas Holdings LLC*, No. AP 19-03012-DM, 2020 WL 9211191, at *3 (Bankr. N.D. Cal. Nov. 2, 2020), and did not bring an action for reformation of the contract.[2]

---

[1] The thrust of Carmel's opening brief cut against this argument; in its current motion, it relies on the fact that, in the final two pages, it arguably advanced a version of the argument. That it now relies on it so strongly is, at the very least, odd. *See* Prior Order 10–11 ("Carmel also appears to argue that, because it was legally owed the insurance proceeds under the agreement, it should have been named a loss payee on the insurance policy and that, this aside, it is the loss payee as a matter of law. Open Br. 26–31. I need not address whether either is true because, regardless, the relevant question for present purposes is whether the trustee's strong-arm powers prevail over Carmel's interest. As explained, for Carmel to prevail, it had to perfect its interest under the statute regardless of what else happened. It does not dispute that this is so. *See, e.g.*, *id*. 15 ('[W]hile the Trustee makes much of the wholly irrelevant fact that Carmel was not listed as a loss payee under the Policy, that is actually a red herring.' (emphasis added)); *id.* (making an argument about what would occur 'even if the designation of the loss payee in the Policy were relevant'); Appellant and Cross-Respondent's Reply Brief on Appeal ("App. Reply") [Dkt. No. 11] 2 ('[T]he issue on this appeal is solely one of perfection of that security interest.'); *id.* (arguing that 'to the extent that it may be of significance' to rebut the Trustee's affirmative argument, 'Carmel is a loss payee'); *id.* 3 ('[T]he Trustee's Brief seeks to impose a requirement that Carmel be listed as a loss payee under the insurance policy in order to perfect its security interest, when there is no such requirement in any statute or case law under the Policy.').")

[2] Carmel's previous briefing cited a principle that California courts have sometimes applied: "That which ought to have been done is to be regarded as done, in favor of him to whom, and against him from whom, performance is due." Dkt. No. 9 at 29 (quoting Cal. Civ. Code § 3529). It has cited no authority that this capacious principle has application here; all of its cases involved quite different circumstances. *See id.* In the modern day, there is an established framework for bringing

1     *Third*, I reject Carmel's argument on the Prior Order's determination about whether this
2 case qualifies for attorney's fees.  *See* Mot. 6–10.  Most of its argument retreads old ground and is
3 adequately addressed by the Prior Order.  The only other argument is Carmel's contention that *Bos*
4 *v. Bd. of Trustees*, 818 F.3d 486 (9th Cir. 2016), contradicts my determination.  Carmel's analogy
5 to *Bos* is not baseless because *Bos* held that a nondischargeability action in an adversary
6 proceeding was not an action "on a contract" under the attorney's fees statute.  *See Bos*, 818 F.3d
7 at 490.  But *Bos* does not reach the situation here.  *Bos* itself explained its limits when
8 distinguishing an earlier case that held an action *did* qualify as "on the contract," *In re Penrod*,
9 802 F.3d 1084 (9th Cir. 2015).  *Bos* explained that *Penrod* was about "whether a provision of the
10 contract should be enforced according to its terms, or whether its enforceability was limited by
11 bankruptcy law."  *Bos*, 818 F.3d at 490 (quoting *Penrod*) (alteration omitted).  It required "the
12 bankruptcy court to determine the enforceability of the agreement, and so it was comfortably an
13 action 'on a contract.'"  *Id.* at 490–91 (internal quotation marks and alteration omitted).  As the
14 Prior Order explained, that describes this case too: the suit was about whether the security interest
15 created by the contract could be enforced or, instead, was deprioritized by the operation of the
16 bankruptcy laws.  *See* Prior Order 19–21.  Unlike this case, *Bos* concerned whether a debt, which
17 happened to arise as a result of a contract, could be discharged.  This case concerned whether,
18 under state law, a contractual security interest had been perfected.  *Id.*

19     The motion for rehearing is DENIED.

20     **IT IS SO ORDERED.**

21  Dated: September 8, 2022

    _____
    William H. Orrick
    United States District Judge

---

28 judicial actions to reform contracts in these circumstances, a framework Carmel has not attempted to use.  *See, e.g.*, *Bonaparte*, 49 F.3d at 488 (analyzing similar claim under reformation doctrine).